**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**ANTHONY BREIDENBACH,**

        **Plaintiff,**                                    **CASE NO. 01-40216**

**vs.**                                                                 **HON. STEPHEN J. MURPHY, III**
                                             **U.S. DISTRICT JUDGE**

**SOPHIA TRIPLETT, et al.,**                          **HON. R. STEVEN WHALEN**
                                             **U.S. MAGISTRATE JUDGE**

        **Defendants.**

                                         /

## REPORT AND RECOMMENDATION

Before the Court are (1) Defendants' Motion for Summary Judgment [Doc. #126], filed by Defendants Sophia Triplett, Nurse Vickie Lopez, Deputy T. Sanford, and Deputy Abbuhl; and (2) Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability as to Defendants Triplett and Lopez [Doc. #128]. Both motions have been referred for a Magistrate Judge's Report and Recommendation (MJRR), pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend as follows:

(1) That Defendants' Motion [Doc. #126] be GRANTED as to Defendants Lopez, Sanford and Abbuhl, dismissing those Defendants with prejudice, and DENIED as to Defendant Triplett.

(2) That Plaintiff's Motion [Doc. #128] be DENIED.

## I.    BACKGROUND

### A.  Procedural Background

Plaintiff, currently on parole to the Michigan Department of Corrections, filed suit on August 17, 2001 pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his civil

rights during his pretrial detention in the Oakland County Jail.   Defendants filed a motion to dismiss and/or for summary judgment on May 31, 2002 [Docket #25].  On March 7, 2003, I issued a Report and Recommendation, finding that the Defendants Hardy, Ritter and Dr. Anaya's motion to dismiss should be granted, and recommending further that Defendants Triplett, Abbuhl, Sanford and Lopez's motion for summary judgment be denied [Docket #48]. The district court adopted my findings on March 31, 2003 [Docket #51].

On September 11, 2003, counsel from Butzel Long agreed to represent Plaintiff under this Court's *pro bono* program. However, on November 18, 2003, counsel was permitted to withdraw because of a conflict of interest, and the case was held in abeyance pending the Court's attempt to obtain new counsel [Docket #62]. On December 6, 2004, the Court vacated the order holding the case in abeyance, and permitted the Plaintiff to proceed *pro se*. On March 28, 2006, the Court granted Plaintiff's renewed request for *pro bono* counsel, and held the scheduling order in abeyance pending the appointment of counsel [Docket #77].  On March 24, 2009 and March 25, 2009, respectively, current counsel Daniel Manville and Patricia Selby entered appearances on Plaintiff's behalf [Docket #119 and #120].

On February 15, 2007, I issued another MJRR, recommending that Plaintiff's Motion for Partial Summary Judgment against Defendant Triplett be denied [Docket #95].

On July 5, 2007, I denied Plaintiff's motion to amend his complaint to add Nurse Beverly Wiscombe  as a Defendant, but permitted him to add a claim for relief for compensatory and punitive monetary damages [Docket #109].

## B.    Factual Background

The facts of this case have been set forth at length in my previous two MJRRs, and will be summarized here.  These motions are based in large part on exhibits that were discussed and considered in the prior MJRRs.  Additional facts have been added based on

subsequent deposition testimony.

On September 4, 1999, Plaintiff attempted suicide while at Oakland County Jail. Plaintiff alleges that the Defendants acted with deliberate indifference toward his medical needs, in violation of the Fourteenth Amendment Due Process Clause. On August 11, 1999, a verbal referral form indicated that Plaintiff was acting strangely and another inmate overheard Plaintiff state that "he didn't care how he did it he would kill himself." *Defendants' Motion,* Exhibit 3. Plaintiff was placed on a fifteen minute watch. *Id.* On August 16, 1999, Defendant Triplett met with Plaintiff and noted that he appeared "at risk for self-harm at this time due to emotional status." *Id.* Exhibit 4. Defendant Triplett also discovered through Plaintiff that two years previously he was prescribed Prozac, but only took it for two weeks. Triplett observed that Plaintiff became tearful and Plaintiff stated that he did not know if he was suicidal. Triplett authorized Plaintiff's placement in the detoxification unit (DTU)[1] for suicide watch, and instructed that he receive a paper gown and an anti-suicide blanket. *Id.*

On August 17, 1999, Defendant Anaya, now dismissed from this lawsuit, prescribed Luvox and Sinequan for Plaintiff, and Plaintiff subsequently received this medication for about three weeks. *Plaintiff's Amended Complaint,* ¶ 1. On August 18, 1999, Triplett met with Plaintiff, noted that he appeared at risk of self-harm, and continued suicide watch with a paper gown and an anti-suicide blanket. *Defendants' Motion*, Exhibit 5. On August 20, 1999, Defendant Triplett noted that Plaintiff was still at risk for self-harm, however, she authorized Plaintiff to be taken out of the DTU and placed in the "front" of the

---

[1] According to the Defendants' previous motion to dismiss and/or for summary judgment, the detoxification unit is located directly across from the booking area and used for prisoners needing constant watch. *Defendants' Motion to Dismiss Brief,* at 1-2 [Docket #25]. Defendants contend that a deputy first placed Plaintiff in the DTU on August 11, 1999, after he made suicidal statements. *Id.*

holding tank. *Id.* Exhibit 6.[2] On August 25, 1999, Plaintiff again met with Defendant Triplett and she noted that Plaintiff did not appear to be suicidal. *Id.*, Exhibit 7.  She noted Plaintiff's statement that he was "taking his medications as directed and feels it is helping him already." Plaintiff indicated a decrease in his "racing thoughts." Triplett discontinued suicide watch in the front of the holding tank, began thirty-minute behavioral watch, and authorized Plaintiff's release into the general population. *Id.*

On August 30, 1999, Plaintiff was taken off of behavioral watch by Defendant Triplett, and again placed on suicide watch in the DTU. *Id.,* Exhibit 8. Triplett ordered a paper gown and up to two anti-suicide blankets for Plaintiff.  She noted that Plaintiff was at risk of self-harm.  Further, Plaintiff informed both Dr. Anaya and Triplett that there were times that he felt hopeless, and "if someone offered me a way to die now I probably would take it." *Id.*  Dr. Anaya increased the dosage of Plaintiff's's medication, and stated that the nurses would watch him take his medication. *Id.*

On September 1, 1999, Plaintiff met with Defendant Triplett again, and although Plaintiff denied suicidal ideation at that time, Triplett continued suicide watch in the DTU, with paper gown and up to two anti-suicide blankets. *Id*., Exhibit 9.   The next day, September 2, 1999, Triplett again met with the Plaintiff, who told her that he wanted to continue his medication, which helped decrease his "racing thoughts," but had not received them on September 1st.  *Id.*, Exhibit 11.  Noting that Plaintiff "appears stable," she discontinued the suicide watch and released him to the general population, with a 30-minute behavioral watch.  *Id.*

At her deposition, Defendant Triplett testified as follows regarding Plaintiff's

---

[2]According to Plaintiff, the holding tank is used for the purpose of observation by staff who come around every fifteen minutes. *Plaintiff's Amended Complaint,* at ¶4

complaint that he was not getting his medication:

> "A: To the best of my recollection, I reviewed the order that Dr. Anaya had written on 8-30-99. Seeing the increase of medication, the dos–excuse me–the dosage increase on both medications and at that time knowing that med orders needed to be noted and in what form the jail clinic processed the medication and communicated that process to the pharmacy knowing that it would have taken a few days for him to get the full dosage of medication–the new changed medication."

> Q: Okay, but he told you he wasn't getting any medication so my question–I understand in regards to the doubling of the dosage, but when he said on 9-1 he wasn't getting medication at all–okay?–beyond looking at the doctor's ordering the double medication did you go and check his medical–his medication form that they used for distribution or medication to determination whether he had gotten–whether he had gotten his medication the day before?

> A: No, I did not. Based on knowing that there had been a change of medication and the time factor that that occurs in." *Id.,* Exhibit 12, pg. 84.

An inmate tracking log dated September 3, 1999 notes that Plaintiff said he was "feeling strange" and would like to speak to his counselor. *Id.*, Exhibit 13. At approximately 12:30 a.m. on September 4, 1999, Plaintiff attempted suicide. *Id.*,Exhibit 15.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary

judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.    ANALYSIS

#### A.    Defendants' Motion [Docket #126]

#### 1.    Defendants Abbuhl and Sanford

At page 1 of Plaintiff's Response [Docket #132], he states, "Plaintiff does not contest the Motion for Summary Judgment as to Defendants Abbuhl and Sanford." Therefore, I recommend that Defendant's Motion for Summary Judgment be GRANTED as to those two Defendants.

#### 2.    Defendant Triplett

Plaintiff alleges a Fourteenth Amendment Due Process violation based on Defendant Triplett's deliberate indifference to his medical needs, specifically the risk that he would attempt suicide. The Supreme Court has held that prisoners have a constitutional right, under the Eighth Amendment, to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "Pretrial detainees have a right under the Fourteenth Amendment to adequate medical treatment, a right that is analogous to the right of prisoners under the Eighth Amendment." *Estate of Carter v. City of Detroit,* 408 F.3d 305, 311 (6th Cir.2005) (citing *Watkins v. City of Battle Creek,* 273 F.3d 682, 685-86 (6th Cir.2001)).

"A cause of action under § 1983 for failure to provide adequate medical treatment requires a showing that the defendants acted with deliberate indifference to the serious medical needs of the pretrial detainee." *Id.* (internal citations and quotations omitted). A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Watkins,* 273 F.3d at 686; *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

A § 1983 due process claim may be predicated on deliberate indifference to the risk that a jail inmate will commit suicide. In *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.1994), the Sixth Circuit, citing numerous cases from this and other circuits, held:

> "A detainee's psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies. *Danese v. Asman,* 875 F.2d

1239, 1243-44 (6th Cir.1989), *cert. denied* 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990); *Roberts, supra,* 773 F.2d at 724. See also *Bowen v. City of Manchester,* 966 F.2d 13, 16 (1st Cir.1992); *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1068 (3rd Cir.1991); *Buffington v. Baltimore County, Maryland,* 913 F.2d 113, 119-20 (4th Cir.1990); *Partridge v. Two Unknown Police Officers,* 791 F.2d 1182, 1187 (5th Cir.1986); *Hall v. Ryan,* 957 F.2d 402, 406 (7th Cir.1992)."

In one of the cases cited, *Bowen v. City of Manchester*, 966 F.2d 13, 16 -17 (1st Cir. 1992), the First Circuit, itself referencing the Sixth Circuit decision in *Danese v. Asman,* 875 F.2d 1239 (6th Cir.1989), held that "[b]y 1986 it was clearly established that police officers violate the fourteenth amendment due process rights of a detainee if they display a 'deliberate indifference' to the unusually strong risk that a detainee will commit suicide."  The court went on to state:

> "The 'deliberate indifference' standard means more than simple negligence. *Torraco v. Maloney,* 923 F.2d 231, 234 (1st Cir.1991). We have held, for example, that a plaintiff may establish deliberate indifference in a prison suicide case by showing

> (1) an unusually serious risk of harm (self-inflicted harm, in a suicide case), (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk. The risk, the knowledge, and the failure to do the obvious, taken together, must show that the defendant is "deliberately indifferent" to the harm that follows.

> *Manarite v. Springfield,* 957 F.2d 953, 956 (1st Cir.1992)." *Id.*

More recently in *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005), the Sixth Circuit clarified the standards for finding deliberate indifference to the risk of suicide:

> "Suicide is a difficult event to predict and prevent and often occurs without warning. Both the common law and the recently developed constitutional law applying to those in custody have taken this uncertainty into account in developing rules of liability based on foreseeability. In *Barber v. City of Salem,* this Court held that:

> > the proper inquiry concerning the liability of a City and its employees in both their official and individual capacities under section 1983 for a jail detainee's suicide is: whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate

> precautions amounted to deliberate indifference to the decedent's serious medical needs.

> 953 F.2d 232, 239-40 (6th Cir.1992) (adopting the holding of *Popham v. City of Talladega,* 908 F.2d 1561, 1563-64 (11th Cir.1990)). *Barber* confirmed an earlier holding that there is no general constitutional right of detainees to receive suicide screenings or to be placed in suicide safe facilities, unless the detainee has somehow demonstrated a strong likelihood of committing suicide. *See Danese v. Asman,* 875 F.2d 1239, 1244 (6th Cir.1989); *Crocker v. County of Macomb,* 119 Fed.Appx. 718, 724 (6th Cir.2005) (unpublished) (finding no change in the law since *Danese* was decided in 1989). As one commentator put it, '[a] right to screening for suicidal propensities or tendencies arises when it is *obvious* that an inmate has such tendency or propensity' (emphasis added)-in other words, when the suicide is clearly foreseeable. George J. Franks, *The Conundrum of Federal Jail Suicide Case Law Under Section 1983 and Its Double Bind for Jail Administrators,* 17 Law & Psychol. Rev. 117, 125 (1993)." (Emphasis in original).

In the present case, the evidence shows that in the weeks before his suicide attempt, Plaintiff informed both Dr. Anaya and Defendant Triplett of his suicidal thoughts. He was prescribed psychotropic medication, and he was in fact placed on suicide watch in the DTU several times. The first prong of the deliberate indifference test has been met, in that the Plaintiff had a "sufficiently serious"–indeed obvious– medical/psychological need.

Moreover, there is a question of fact as to whether Plaintiff has met the second prong, that is, whether Defendant Triplett "subjectively perceived facts from which to infer substantial risk to the prisoner, that [she] did in fact draw the inference, and that [she] then disregarded that risk." *Comstock v. McCrary, supra*, 273 F.3d at 702.

Clearly, Triplett perceived Plaintiff to be a suicide risk as early as August 16, 1999, when she placed him on a suicide watch, stating that he "appears in some acute distress," that he was "anxious and depressed," and that he "appears at risk for self harm at this time due to emotional status." *Defendants' Motion*, Exhibit 4. The theory that she perceived, but disregarded that risk through September 4, 1999 is supported by the following evidence:

1. In her response to Plaintiff's Second Request for Admissions (*Plaintiff's Motion*

*for Partial Summary Judgment*, Docket #128, Exhibit 10), Triplett states that she "was responsible for attempting to identify suicidal pre-trial detainees and had some involvement in their cell placement." She further states, "I was responsible for the level of suicidal watch."

2. She was aware that Dr. Anaya had prescribed psychotropic medications, and that these medications appeared to stabilize the Plaintiff's condition. *See* Defendants' Exhibits 6 and 7, Triplett's progress notes indicating Plaintiff's statements that he is receiving his medications without problem, and they seem to be helping him.

3. On August 18, 1999, the Plaintiff told Triplett that he had not yet received his psychotropic medications. She told him that "some medications take time to be effective so he may not see changes in a few days." At that time, Triplett determined that Plaintiff was still at risk of self-harm, and continued him on suicide watch. *See* Defendants' Exhibit 5.

4. She knew on August 30, 1999 that Dr. Anaya had doubled the dosage of Plaintiff's medications, and had ordered that the nurses watch him take the medications. *See* Defendants' Exhibit 8. At that time, she discontinued the 30-minute behavioral watch in general population, and reinstated suicide watch in DTU, with a paper gown and anti-suicide blanket. *Id.* She testified at her deposition that she knew that it would take a few days for Plaintiff to receive the full dosage as prescribed by Dr. Anaya on August 30th. Defendants' Exhibit 12.

(5) On September 1, 1999, a deputy informed Triplett that Plaintiff said he had received his medications and was sleeping better. Plaintiff said that he wanted to stay in DTU because it was quiet. Triplett wrote that "Client denies current suicidal ideation when asked directly by writer." Exhibit 9. Still, she continued the suicide watch in DTU.

5. On September 2, 1999, Plaintiff told Triplett that he wanted to continue his

medications, but had not received them the previous day. Nevertheless, she discontinued suicide watch and released Plaintiff to the general population. Exhibit 11.

6. Triplett did not make any inquiry as to why Plaintiff was not receiving his medications on or after September 2, 1999. *See* Triplett's response to Plaintiff's request for admissions, *supra*.

In summary, Defendant Triplett knew that Plaintiff was an emotionally labile suicide risk, but that the medications prescribed by Dr. Anaya helped stabilize him. She knew that the medications took some time–possibly a few days–to be effective. She knew that on August 30th, Dr. Anaya *doubled* the dosage, and she testified as to her belief that it might be several days before Plaintiff actually received the elevated dosage. On September 2nd, she knew that Plaintiff had not received *any* medications the previous day. As late as September 1st, she had placed Plaintiff on a suicide watch in the DTU.

Yet, despite her knowledge that Plaintiff had not received medications that reduced the risk of suicide, and her knowledge that it might be several days before he got the increased dosage Dr. Anaya had ordered, she discontinued the suicide watch and returned him to the general population on September 2nd. She argues in her Reply Brief [Docket #134, p.4] that "there was no demonstration of a strong likelihood on suicide on this Plaintiff's part" because he "specifically denied suicidal ideation or intention, both on 9/2 and 9/3/99." However, viewing the facts in the light most favorable to the Plaintiff–as we must in a summary judgment motion–the Plaintiff also denied suicidal ideation on August 20th, yet Triplett kept him on a suicide watch anyway. In fact, she did not discontinue that suicide watch until five days later, on August 25th. Defendants' Exhibit 7. So the Plaintiff's self-reported absence of suicidal ideation is not the dispositive factor. In view of all these facts, a trier of fact could reasonably find that Plaintiff "showed a strong likelihood that he would

-11-

attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the [his] serious medical needs," *Barber v. Salem*, 939 F.2d 232, 239-40 (6ᵗʰ Cir. 1992), and that Defendant Triplett failed to take adequate precautions.

Nor is Defendant Triplett protected by qualified immunity. First, in my MJRR filed on March 7, 2003, I found, in recommending denial of summary judgment as to Triplett, that she was not entitled to qualified immunity. Judge Gadola's order adopting the MJRR constitutes law of the case.[3] In any event, both prongs of the qualified immunity analysis, as described in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), and *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), have been met. There is a question of fact as to whether Plaintiff suffered a constitutional violation, and the due process right to be free from deliberate indifference to the risk of suicide was clearly established by 1999. *See Danese v. Asman,* 875 F.2d 1239, 1243-44 (6th Cir.1989)*; Barber v. Salem, supra*.

Finally, the same evidence that creates a question of fact as to deliberate indifference also leaves questions of fact as to Plaintiff's state law claim of gross negligence. M.C.L. §691.1407(7)(a) "defines 'gross negligence' as 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.'" *Jones v. Oakland County,* 585

---

[3] The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). The Defendants' earlier summary judgment motion [Docket #25] contains and refers to many of the same exhibits submitted with the present motion, particularly the progress reports of Defendant Triplett. Judge Gadola denied summary judgment as to Triplett [Docket #48]. Thus, the present motion could also be denied in its entirety based on the doctrine of law of the case. However, recognizing that the doctrine merely "directs a court's discretion, it does not limit the tribunal's power," *Id,* I have addressed the merits of both motions as well.

F.Supp.2d 914, (E.D.Mich.2008)(Rosen, J.); *Jackson v. County of Saginaw,* 458 Mich. 141, 580 N.W.2d 870, 874 (1998). In the context of this case, the standard for establishing "gross negligence" is basically the same for establishing "deliberate indifference." *See Soles v. Ingham County*, 316 F.Supp.2d 536, 546 (W.D. Mich. 2004) (holding that the "definition of gross negligence under Michigan law establishes a standard materially indistinguishable, as applied to the facts of this case, from the deliberate indifference standard discussed...in connection with plaintiff's § 1983 claims"); *Bishop v. Hackel*, 2009 WL 2999169 (E.D. Mich. 2009)(citing *Soles*). In *Farmer v. Brennan, supra*, 511 U.S. at 836, the Supreme Court equated "deliberate indifference" with "recklessness," and "recklessness" with "gross negligence," stating that all three lie "somewhere between the poles of negligence at one end and purpose or knowledge at the other." In *McGhee v. Foltz,* 852 F.2d 876, 881 (6th Cir.1988), the Sixth Circuit held that "gross negligence" entailed a lower standard than "deliberate indifference." *See also Vartinelli v. Cady*, 2009 WL 3180724, *9 (E.D.Mich. 2009) (citing *McGhee*) ("Even 'gross negligence' by prison officials is insufficient to support a deliberate indifference claim").

Thus, the Plaintiff having shown issues of material fact as to deliberate indifference, he has *ipso facto* survived summary judgment as to the gross negligence claim against Defendant Triplett.

For all these reasons, summary judgment should be denied as to Defendant Triplett.

### 3. Defendant Lopez

In the MJRR filed on March 7, 2003, I was extremely critical of Defendant Lopez, based on her counsel's argument at the time that it was Plaintiff's fault he did not receive his medications on September 1st, because he did appear at his cell door when she called "med-path." I noted that Dr. Anaya had ordered that "the nurses will watch him take his

medication." It was subsequently discovered that it was *not* Defendant Lopez who bobbled the med-path call, but rather Nurse Beverly Wiscomb, who is now deceased. Instead, Defendant Lopez encountered the Plaintiff on the evening of September 3rd, when he told her that he was not getting his medication. Plaintiff also told her that he "had just come off" suicide watch. While at the time of her deposition Lopez did not have an independent recollection of what happened 10 years earlier (*See* Lopez's Deposition, Plaintiffs Motion for Partial Summary Judgment, Docket #128, Exhibit 14, p. 12), she testified that it would have been her practice to finish her distribution ("med-path") rounds, and then investigate any complaints such as an inmate not receiving medication. *Id.*, pp.13-14.

While Plaintiff argues that Lopez gave him his medication earlier, when he was in the DTU, her knowledge of Plaintiff's suicidal tendencies, and the relationship of his medication regimen to controlling those tendencies, was significantly less than that of Defendant Triplett. Unlike Triplett, Lopez was not charged with making the determination of whether Plaintiff was a suicide risk. Her job was to pass out medication. As to whether she would know if an inmate in general population was on suicide watch, she testified as follows:

> Q: You mentioned a number of considerations, but are there other considerations that would raise the priority if–would you know if an inmte had been on suicide watch?
>
> A: No.
>
> Q: Ever?
>
> A: I would have a good kind of clue if I went to their cell and they were in a paper gown. That would be a clue, but other than that, no.
>
> Q: Okay. Or if they're on behavior watch?
>
> A: No.
>
> Q: You would have no way of knowing that?
>
> A: Unh-unh (negative). Defendants' Exhibit 17 (Lopez deposition), p. 14.

Significantly, Plaintiff told Lopez on September 3rd that he had just been *taken off* of suicide watch, not that he was *on* suicide or behavior watch. To a nurse in Lopez's position, this would imply that other medical professionals and jail personnel had determined that Plaintiff did not at that time present a risk of suicide, regardless of whether he had received his medication. Under these facts, no reasonable trier of fact could find that Lopez was deliberately indifferent, that is, that she perceived and disregarded the risk that Plaintiff would commit suicide because he did not have his medications. Even if the trier of fact found that Lopez should have, but did not check the Plaintiff's records and notify someone that he was not receiving his proper medication, this would at most amount to mere negligence, not deliberate indifference or gross negligence.

Therefore, summary judgment if favor of Defendant Lopez should be granted.

### B.    Plaintiff's Motion [Docket #128]

Plaintiff moves for summary judgment on the issue of liability as to Defendants Triplett and Lopez.

As discussed above, I have recommended that Lopez's own motion for summary judgment be granted. For the same reasons, Plaintiff's motion should be denied as to Lopez.

I recommended denial of Defendant Triplett's motion for summary judgment because there are questions of material fact regarding her alleged deliberate indifference. In the MJRR issued on February 15, 2007 [Docket #95], I recommended that Plaintiff's motion for partial summary judgment as to Triplett be denied. As an initial matter, that MJRR, which was adopted by Judge Gadola, is law of the case and should not be revisited. *See* fn. 3, *supra*. In addition, in view of the evidence discussed above, my reasoning in the previous MJRR is equally pertinent here:

> "However, while the material presented allows for the reasonable possibility that  Defendant Triplett violated Plaintiff's civil rights, the same

-15-

body of evidence provides support for the opposite conclusion. August 20, 1999 notes made by Tripplett indicate that Plaintiff told her he was feeling "better" with "a decrease in racing thoughts," and that Plaintiff told the treater that "he is ready to be around other people and wants to come out of the DTU." *Docket #88,* Exhibit C. Triplett's September 1, 1999 notes state that "[Plaintiff] denies current suicidal ideation." *Id.* at Exhibit D. Most significantly, Defendant's September 2, 1999 notes (the last made before Plaintiff's suicide attempt two days later) show that Plaintiff again claimed that he was "feeling better," denying auditory or visual hallucinations; problems eating; or "current suicidal ideation when directly asked by [Triplett]. *Id.* at Exhibit F.

"In addition to the presence of evidence supporting the non-moving party, the fact that the alleged constitutional violation pertains to a medical judgment supports the denial of Plaintiff's summary judgment motion. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 429 U.S. 97, 103, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) ("Deliberate indifference . . . does not include negligence in diagnosing a medical condition"); *Farmer v. Brennan,* 511 U.S. 825,114 S.Ct. 1970, 1982-83,128 L.Ed.2d 811 (1994) ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted"). Whether Defendant Triplett's action were lawful as she contends, merely negligent, or, as Plaintiff maintains, a violation of his constitutional rights are questions properly reserved for the trier of fact."

Therefore, Plaintiff's motion for summary judgment as to Defendant Triplett should be denied.

## IV.   CONCLUSION

For these reasons, I recommend as follows:

(1) That Defendants' Motion [Doc. #126] be GRANTED as to Defendants Lopez, Sanford and Abbuhl, dismissing those Defendants with prejudice, and DENIED as to Defendant Triplett.

(2) That Plaintiff's Motion [Doc. #128] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14)

days of service of a copy hereof as provided in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1 (d)(2). Failure to file specific objections constitutes a waiver of any further right to appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct.46, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local* 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1 (d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response should not be more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

<div style="margin-left:40%">

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

</div>

Dated: February 9, 2010

<div style="text-align:center">CERTIFICATE OF SERVICE</div>

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 9, 2010.

<div style="margin-left:40%">

s/Susan Jefferson
Case Manager

</div>